## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM MUTUAL AUTOMOBILE** | : | |
| **INSURANCE COMPANY** | : | |
| and | : | |
| **STATE FARM FIRE AND CASUALTY** | : | |
| **COMPANY,** | : | **CIVIL ACTION** |
| | : | **No.  2:15-cv-05929** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LEONARD STAVROPOLSKIY, P.T., D.C.,** | : | |
| **JOSEPH WANG, P.T., D.C., EASTERN** | : | |
| **APPROACH REHABILITATION, LLC and** | : | |
| **AQUATIC THERAPY OF CHINATOWN, INC.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## RESPONSE MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

I.      **INTRODUCTION**

This case is about a scheme to defraud State Farm, and other insurers, through the submission of fraudulent bills and supporting documentation that document false physical examination findings, diagnoses, and prognoses, and collectively misrepresent that the treatment rendered was medically necessary and individually tailored, when it was not.  In its Amended Complaint, State Farm alleged that from 2010 until the present, Eastern Approach Rehabilitation and Aquatic Therapy of Chinatown, as well as their owners Leonard Stavropolskiy and Joseph Wang, (collectively "Defendants") submitted thousands of bills and supporting documentation ("Chiropractic Records") for medical treatment purportedly rendered to State Farm insureds. However, instead of "legitimately examin[ing] patients to evaluate the true nature and severity of their injuries, Defendants implemented a predetermined protocol of falsely documenting "moderate-to-severe joint dysfunctions, pain, and spasms across entire regions of the spine and in the pelvis."  Am. Compl. at ¶¶ 3, *see also Id.* at ¶ 47.  Defendants also implemented a protocol treatment plan under which nearly every patient receives a combination of passive modalities at nearly every visit, regardless of the patients' symptoms and medical needs, or response (or lack thereof) during treatment.  *Id.* at ¶ 64.  In sum, Defendants submitted patient records that falsely document: (a) the patients' complaints; (b) the providers' physical examination findings, diagnoses, and prognoses; and (c) that treatment rendered was medically necessary and individually tailored.  *Id.* at ¶¶ 28, 77.

On February 16, 2016, this Court granted Defendants' motion to dismiss, providing a limited holding that State Farm had failed to allege with sufficient particularity "which particular actor made" and submitted the false Chiropractic records, the role of clinic owners Stavropolskiy and Wang, and how Defendants used the WritePad computer program to

1

conceal their fraud scheme.  Dkt. 16 ("Court Order") at 8-9.  In the Amended Complaint, State Farm addressed all of the Court's concerns by:

- Providing specific, pinpoint allegations and particular examples of fraudulent records within the body of the complaint, *id.* at ¶¶ 37-65, and explaining why they were fraudulent;

- Updating Exhibit A, which now identifies which clinic generated the fraudulent records, whether Stavropolskiy and Wang were involved in treating the patient, and whether the Chiropractic Records were submitted directly to State Farm or sent to a personal-injury attorney, who then sent them to State Farm, *id.* at ¶¶ 33, 76;

- Providing specific allegations as to the role of the individual defendants, *id.* at ¶¶ 27-36; and

- Providing specific allegations identifying the name and describing the nature of the software program that the Defendants used to disguise their fraudulent records, *id.* at ¶¶ 66-72.

Because State Farm more-than-sufficiently addressed all of the concerns raised in the Court's Order, Defendants have now filed a Motion to Dismiss that manufactures brand-new arguments, none of which have any merit.  Specifically, Defendants contradictorily argue that State Farm does not allege that the Chiropractic Records included any false statements ***and*** that the false statements included in the Chiropractic Records were so obvious that State Farm could not have justifiably relied upon them.  In all, Defendants raise three arguments, all of which are predicated on a mischaracterization of the actual allegations pled in the Amended Complaint.  *See* Dkt. 22 ("Mot.").  First, Defendants argue that State Farm has not alleged that any of the medical records were false and, therefore, State Farm's fraud-based claims fail.  Second, Defendants argue that because State Farm has alleged that the fraudulent nature of Defendants' bills and supporting

documentation was "patent," State Farm could not have justifiably relied on them.  Finally, Defendants argue that the statute of limitations started running as soon as State Farm received the Chiropractic Records and, therefore, State Farm is barred from recovering damages on fraudulent Chiropractic Records submitted more than four years before this case was filed.  This argument too depends on factual determinations that cannot be made at the motion to dismiss stage.

As further detailed below, all of these arguments are based on mischaracterizations of State Farm's Amended Complaint and the governing law.  First, State Farm's Amended Complaint alleges, in detail, that Defendants submitted Chiropractic Records that were false and fraudulent.  Second, as detailed in the Amended Complaint, State Farm justifiably relied upon Defendants' submissions because the fraudulent nature of Defendants' bills and supporting documentation is not obvious or patent, particularly when reviewed on any individual claim.  Rather, only when these records are viewed "collectively" do they "reveal pervasive patterns that are not credible across the patient population, and instead demonstrate an intentional effort to fabricate documentation to justify continued treatment of the patients and induce payments from third-party payors like State Farm."  Am. Compl. at ¶ 28.  Moreover, the Amended Complaint alleges that Defendants took affirmative steps to conceal their fraud, including using a software program to "randomize" certain phrases in treatment notes.  Indeed, nothing in the Amended Complaint suggests that State Farm knew, or should have known as a matter of law, about the fraudulent nature of Defendants' bills and supporting documentation until shortly before this case was filed.

## II.   STATEMENT OF FACTS

### A.   The Court's Motion to Dismiss Order

On February 16, 2016, this Court issued its order on Defendants' Motion to Dismiss State Farm's Original Complaint.  Dkt. 16.  As this Court explained, State Farm's Original Complaint alleged that Defendants submitted false and fraudulent insurance claims, which included

"fabricated medical records to exaggerate claims or include findings that were not actually observed." *Id.* at 2. Defendants moved to dismiss the Original Complaint, raising only two arguments: (1) State Farm's allegations regarding the fraud scheme do not satisfy Rule 9(b) and (2) State Farm's allegations "do not plead sufficient facts to show the involvement of Stavropolskiy and Wang." *Id.* at 5, 10.

The Court's Order dismissed State Farm's Complaint without prejudice, instructing State Farm to provide more particularity regarding "which particular actor made" and submitted the false Chiropractic records, the role of clinic owners Stavropolskiy and Wang, and how Defendants used software (*i.e.* the WritePad computer program) to conceal that Defendants were merely copying observations, findings, and treatment from visit to visit rather than individually tailoring them to patients' individual needs. Court Order at 8-10.

## B.  State Farm's Amended Complaint

On March 20, 2016, State Farm filed its Amended Complaint against Defendants Eastern Approach Rehabilitation and Aquatic Therapy of Chinatown, as well as their owners Leonard Stavropolskiy and Joseph Wang. Dkt. 20 ("Am. Compl."). Consistent with the Original Complaint, State Farm alleged that for more than five years, Defendants engaged in a scheme to fraudulently induce State Farm to pay for services and treatment that were not medically necessary or individually tailored to the patients' unique symptoms and needs. As part of their scheme, Defendants have submitted Chiropractic Records for services that were not legitimate and treatment that was not medically necessary. *Id.* at ¶ 1. To induce State Farm to pay for its charges, Defendants have and continue to create and submit "false and misleading chiropractic bills and supporting documentation, including Initial Examination Notes and Daily Visit Notes purporting to document subsequent chiropractic evaluations, and Reexaminations." *Id.* at ¶ 27.

The Defendants' scheme begins with a fraudulent Initial Examination, in which Stavropolskiy, Wang, and employee chiropractors ("the Chiropractors") "document false 'Objective' spinal examination findings and diagnoses, and then use these findings and diagnoses to prescribe medically unnecessary treatment." *Id.* at ¶ 37. Among other non-credible findings, the Initial Examinations falsely document that nearly all patients "have moderate-to-severe joint fixations (and other near-identical synonyms for joint fixations) across numerous regions of the back and the left pelvis for virtually every patient." *Id.* at ¶ 38. Additionally, rather than accurately recording patients' symptoms and injuries, the Chiropractors falsely document "moderate-to-severe pain across numerous regions of the back, as well as muscle spasms (or near-identical synonyms for muscle spasms) across multiple regions of the spine, often bilaterally." *Id.*

After the fraudulent Initial Examination, the Defendants create a series of fraudulent Daily Visit Notes that also misrepresent patients' complaints and document false physical examination findings, diagnoses, and prognoses, as well as misrepresent that the treatment rendered was medically necessary. *Id.* at ¶¶ 49-65. Indeed, rather than accurately document patients' complaints, diagnoses, and improvement, the Daily Visit Notes typically copy the findings from the fraudulent Initial Examination. Indeed, "the pattern of copying the findings across Daily Visit Notes continues from one Re-Examination until the next Re-examination, indicating that the Chiropractors are not conducting any legitimate physical examinations at all." *Id.* at ¶ 31.

The fraudulent nature of Defendants' bills and supporting documentation is not obvious on the face on any individual record or even the set of records from any individual patient. Rather, only when these records are viewed "collectively" do they "reveal pervasive patterns that are not credible across the patient population, and instead demonstrate an intentional effort to fabricate

documentation to justify continued treatment of the patients and induce payments from third-party payors like State Farm." *Id*. at ¶ 28; *see also id*. at ¶¶ 47, 63, 64.

Consistent with the Court Order, the Amended Complaint describes who created the fraudulent Chiropractic Records, how State Farm received the fraudulent Chiropractic Records, and how the clinic owners Stavropolskiy and Wang are involved in the scheme.  Specifically, the Amended Complaint includes an updated Exhibit A that identifies 376 patients for whom Defendants submitted fraudulent Chiropractic records and, for each of these patients, describes, among other things: (a) which clinic generated and submitted the fraudulent Chiropractic Records; (b) whether Stavropolskiy or Wang personally created any of the records; and (c) whether Defendants sent the Chiropractic Records directly to State Farm or to personal injury attorneys who then sent the records to State Farm.  The Amended Complaint further alleges that clinic owners Wang and Stavropolskiy personally "subjected patients to services that are performed, if performed at all, pursuant to a scheme to defraud that is tailored to exploit the patient's Medical Payments Coverage ("MPC") and inflate the value of Bodily Injury (BI) and Uninsured/Underinsured ("UM") claims, rather than provide necessary services that address the patients' unique medical needs." *Id*. at ¶ 2.  And, to the extent that Wang and Stavropolskiy did not personally treat patients, the Amended Complaint alleges that they "directed and controlled employee chiropractors" who "made the misrepresentations in the Chiropractic Records at Stavropolskiy and Wang's direction, and pursuant to the fraud scheme that they had implemented." *Id*. at ¶¶ 2, 33.

The Amended Complaint also addresses the Court's concerns regarding the software program Defendants used to further conceal their fraud scheme.  In the Amended Complaint, State Farm specifically identifies WritePad as the software program Defendants used and describes

precisely how Defendants use it to create the misimpression that the Daily Visit Notes are accurate. Am. Compl. at ¶¶ 66-72.  In particular, as detailed in the Amended Complaint, Defendants create Daily Visit Notes that do not legitimately document the patients' complaints, diagnoses, or prognoses.  Instead, Defendants copy the findings in the Initial Examinations across almost every Daily Visit Note from a patient's Initial Examination until a spinal re-examination occurs.  *Id.* at ¶ 54.  But, to avoid detection and conceal that they are merely copying findings from the Initial Examination, Defendants use the "randomization feature" from the WritePad documentation program, which automatically makes identical subjective and objective findings appear to be different by interchanging synonymous phrases and altering sentence structure.  *Id.* at ¶¶ 66-72. In other words, Defendants use WritePad to automatically "apply different language, phraseology, and sentence structure in the patient records to make it appear that the reported complaints, findings, and diagnoses were individualized to each patient purportedly examined, diagnosed and treated," when, in fact, Defendants were merely copying complaints, findings, and diagnoses from the Initial Examination.  *Id.* at ¶ 70.

## III.   STANDARD OF REVIEW

As this Court has explained, at the motion to dismiss stage, the District Court must "accept all of the well-pleaded facts as true and view them in the light most favorable to the plaintiff, but may reject any of the legal conclusions."  *Sterling Asset Mgmt., LLC v. VTL Associates, LLC,* No. CIV.A. 10-07102, 2011 WL 3652330, at *2 (E.D. Pa. Aug. 19, 2011).  Moreover, "[a]t the pleading stage, a plaintiff is not required to go into particulars, but 'need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Id.* Importantly, "a complaint need not anticipate or overcome affirmative defenses; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."  *Schmidt v. Skolas,* 770 F.3d 241, 248 (3d Cir. 2014).

## IV.     ARGUMENT

### A.     State Farm's Amended Complaint Expressly And Sufficiently Alleges False Statements Made By Defendants, Including False Representations Regarding The Physical Examination Findings, Diagnoses, And Prognoses, As Well As The Medical Necessity Of Treatment.

Defendants' first new argument is that State Farm's fraud-based claims should be dismissed because the Amended Complaint purportedly does not allege any false statements. Mot. at 1-4. Defendants contend that State Farm does not dispute that the medical records at issue were "accurate" and "is not alleging that the patients did not in fact suffer the injuries described" or "that the findings reported were not actually made." *Id*. at 3. Instead, according to Defendants, this case is merely about the use of synonyms and that State Farm only alleges that Defendants used "synonyms in separate reports" to provide "accurate" descriptions. *Id*. at 3.

Throughout the Amended Complaint, State Farm not only alleges that the medical records were purposely false, but provides pinpoint examples illustrating *how* they were false. *See, e.g.,* Am. Compl. at ¶¶ 3, 6, 29, 37-65. In fact, Defendants' own argument contradicts their unsupported proclamations that State Farm has not alleged falsity. Specifically, in the first section of their Motion, they insist that State Farm never alleged any false statements, *see* Mot. at 1-2, but then concede, in a later section, that "State Farm alleges that Defendants were making ***fraudulent misrepresentations*** in every initial examination, every re-examination, and every Daily Visit note which occurred in every claim." Mot. at 13-14 (emphasis added). In other words, Defendants' suggestion that State Farm's Amended Complaint alleges nothing more than the use of synonyms is simply a red herring that mischaracterizes the allegations of the Amended Complaint.

### 1.     <u>State Farm's Amended Complaint Expressly Alleges That Defendants Submitted False Chiropractic Records.</u>

Contrary to the Defendants' mischaracterization, State Farm expressly alleges that Defendants submitted ***fraudulent*** Chiropractic Records throughout the Complaint and specifically

describes and illustrates how these records were false.  *See, e.g.,* Am. Compl. at ¶¶ 3, 6, 29, 37-65.

Indeed, State Farm begins its description of Defendants' fraud scheme by alleging that Defendants

"defrauded State Farm by creating and submitting ***false*** and ***misleading*** chiropractic bills and

supporting documentation, including Initial Examination Notes and Daily Visit Notes purporting

to document subsequent chiropractic evaluations, and Reexaminations ("Chiropractic Records")."

*Id.* at ¶ 27 (emphasis added).  Thereafter, State Farm describes, with specific details and concrete

examples, how the Initial Examinations, Reevaluations, and Daily Visit Notes falsely document

the patients' examination findings, diagnoses, and prognoses.

As detailed in State Farm's Amended Complaint, Defendants' scheme begins with the

fraudulent Initial Examination, which falsely documents patients' complaints and subsequent

diagnoses.  *Id.* at ¶¶ 37-48.  In particular, Defendants use the Initial Examination to falsely

document the results of an "objective" spinal examination, namely that almost every patient had:

(a) "moderate-to-severe joint fixations (and other near-identical synonyms for joint fixations)

across numerous regions of the back and the left pelvis for virtually every patient;" (b) "moderate-

to-severe pain across numerous regions of the back;" and (c) "muscle spasms (or near-identical

synonyms for muscle spasms) across multiple regions of the spine, often bilaterally."  *Id.* at ¶ 38.

Defendants "then provide a laundry list of fraudulent diagnoses that purport to reflect the false

findings from their predetermined spinal examinations."  *Id.* at ¶ 48.  "Moreover, the diagnoses for

the majority of patients span the entire region of the spine (cervical, thoracic, and lumbar)," which

are documented, on a patient-by-patient, basis in Exhibit A.  *Id.*  Exhibit A also documents, on a

patient-by-patient basis, which patients were described as having moderate to severe complaints

and muscle spasms in the Initial Examinations   Additionally, the Amended Complaint describes

and attaches as exhibits the Initial Examinations for Patients 131 and 160 as illustrative examples. *See id.* at Exs. B, C.

The Amended Complaint further explains that after the fraudulent Initial Examination, Defendants continue their fraud scheme through a series of Daily Visit Notes that also "purportedly document daily 'Objective' spinal examinations, as well as the treatment that each patient purportedly receives on each day." *Id.* at ¶ 49. Like the Initial Examinations, the Daily Visit Notes falsely document that almost all patients had "moderate-to-severe (a) joint dysfunctions in multiple (and often all) regions of the spine; (b) complaints of pain in multiple (and often all) regions of the spine elicited through palpation; and (c) muscle spasms in multiple (and often all regions of the spine)." *Id.* at ¶ 50. In addition to generally documenting false results for the "Objective" spinal examinations, the Daily Visit Notes reveal that Defendants merely copied findings from the Initial Examinations "across almost every Daily Visit Note from a patient's Initial Examination until a spinal re-examination occurs." *Id.* at ¶ 54. Exhibit A to the Amended Complaint captures, on a patient-by-patient basis, which patients had Daily Visit Notes reflecting this pattern of copying. *See id.* at Ex. A.

The Amended Complaint further describes that fraudulent Daily Visit Notes also falsely represent that the treatment was medically necessary and individually tailored to the patient. *Id.* at ¶ 64. Instead, "the treatment purportedly delivered at each session is not individually tailored for patients, but instead is virtually identical from session to session, and from patient to patient, consisting predominantly of passive modalities, despite the wide range of unique circumstances presented by each patient, including the patients' ages, physical characteristics, symptoms, histories, abilities to participate in treatment, and their responses thereto." *Id.*

In short, contrary to Defendants' characterization, the Amended Complaint specifically alleges that Defendants' "Chiropractic Records *misrepresent* the patients' complaints and document false physical examination findings, diagnoses, and prognoses." *Id*. at ¶ 28 (emphasis added). Given the specific, pinpoint allegations and illustrations of false medical records in the Amended Complaint, Defendants' unsupported assertion that State Farm has not alleged any misrepresentations is perplexing. In any event, their argument contradicts the express allegations in the Amended Complaint, and should be disregarded.

### 2.   Defendants' Suggestion That This Case Hinges On The Use Of Synonyms Is A Red Herring.

Throughout their Motion, Defendants insist that this case is merely about the use of "synonyms," contending that the "randomization of accurate verbiage is the entire basis of State Farm's lawsuit." Mot. at 10 n.4. But this characterization is nothing more than a sleight-of-hand argument that attempts to distort State Farm's Amended Complaint and distract from the affirmative steps Defendants took to conceal that they were merely copying findings across the Daily Visit Notes, and *not* conducting legitimate physical examinations of patients. Here, State Farm has not alleged that the use of synonyms or randomization of synonymous phrases is the only affirmative act of Defendants' fraud scheme. Rather, as detailed in the Amended Complaint, State Farm has alleged that Defendants use the randomization feature of a software program as the end step of the fraud *to conceal* the fact that they are not conducting legitimate physical examinations of patients or performing legitimate medical treatments, but rather are simply copying purported physical examination findings across Daily Visit Notes.

In particular, State Farm alleges that Defendants used the WritePad software program to conceal the fact that the purported physical examination findings in their patient records are false. As described above and further alleged in explicit detail in State Farm's Amended Complaint,

11

"[a]lthough chiropractic notes are supposed to accurately reflect a patient's actual findings on that day," Am. Compl. at ¶ 70, Defendants falsely document predetermined complaints, findings, diagnoses, and prognoses through the Chiropractic Records.  ***On top of*** failing to accurately document a patient's complaints, exam findings, diagnoses, and prognosis, Defendants merely copy the false spinal exam findings from the Initial Examinations across almost every Daily Visit Note from a patient's Initial Examination until a spinal re-examination occurs.  Defendants then use WritePad's randomization feature "to apply different language, phraseology and sentence structure in the patient records" to make it appear that the spinal exam findings differed from day to day.  *Id.*  In other words, Defendants use the WritePad program to make the records ***appear*** to the reader (*i.e.* insurance companies) that "the reported complaints, findings and diagnoses were legitimate and individualized to each patient purportedly examined, diagnosed, and treated, when in fact, they were pre-determined and not individualized to the patients' true complaints."  Am. Compl. at ¶ 70.

To highlight how Defendants used WritePad to conceal that they were merely copying findings, State Farm provided a detailed illustrative example in the body of the Amended Complaint, and attached the accompanying records.  *See id.* at ¶ 71.  Specifically, for Patient 131, the Initial Examination on 5/23/11 documents a "moderate degree of **fixation** at C3 - C7, T6 and T9."  Two days later on 5/25/11, the Daily Visit Note documents a "moderate **loss of joint function**" – at the exact same locations, namely "at C3 - C7, T6 and T9."  On 6/1/11, Defendant Wang documents a "moderate degree of **spinal joint fixation** at C3 - C7, T6 and T9," again the same exact locations.  And on 6/3/11, a different Chiropractor documents a "moderate **fixation of the spinal joints** at C3 - C7, T6 and T9."  The terms "fixation," "loss of joint function," "spinal joint fixation," and "fixation of the spinal joints" are actually synonymous phrases, which means

12

Patient 131 purportedly had the *same* findings at identical locations across the spine on four different visits.   But to disguise the fact that these Daily Visit Notes were effectively simply identical (and highly improbable) findings across numerous treatment sessions, Defendants used the WritePad program to generate four different phrases to describe the same purported dysfunction, so that if the notes were compared, the descriptive language *appeared* different from treatment session to session.   In this way, Defendants provided the appearance of variability in the findings to help hide their fraud.

**B.    State Farm Justifiably Relied On Defendants' Bills And Supporting Documentation.**

Although Defendants devote the first portion of their Motion arguing that State Farm purportedly did not allege that the Chiropractic records included any false statements, Defendants' second argument contradicts this and proclaims that the falsity of the Chiropractic Records was so "obvious" that State Farm could not have justifiably relied upon them as a matter of law.   Mot. at 4-8.   In particular, Defendants contend that State Farm's cause of action for common law fraud fails as a matter of law because State Farm does not adequately allege that it justifiably relied on Defendants' fraudulent submissions.[1]   According to Defendants, "State Farm specifically and repeatedly alleges the 'falsity' of Defendants' records is obvious on their face."   *Id.* at 6. Defendants do not cite to any specific allegations in the Amended Complaint to support this claim. Indeed, Defendants further insist, without citing to the Amended Complaint, that "State Farm

---

[1] Although "justifiable reliance" is an element of a common law fraud claim, it is not an element of a claim under Pennsylvania's Insurance Fraud Statute.  *See State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 633 (E.D. Pa. 2010) (noting that "text of the [Pennsylvania Insurance Fraud Statute] does <u>not</u> identify reliance as an element of Pennsylvania's Insurance Fraud Statute") (emphasis added); *see also Church Mut. Ins. Co. v. All. Adjustment Grp.,* 102 F. Supp. 3d 719, 728 (E.D. Pa. 2015) (noting that "reliance is <u>not</u> an element of § 4117(b) (2) insurance fraud") (emphasis added).  Accordingly, Defendants' argument regarding reliance has no bearing on State Farm's insurance fraud and unjust enrichment claims.

alleges the misrepresentations were patent in <u>each and every individual claim</u> as well." *Id.* (emphasis in the original).

As an initial matter, Defendants' argument runs squarely into governing law that holds that the issue of whether a party's reliance on fraudulent statements is "justifiable" or "reasonable" is quintessentially an issue of fact that is not properly resolved at the motion to dismiss stage. Thus, the Third Circuit has stated that "We stress, as have the Pennsylvania courts, that the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury." *See Tran v. Metro. Life Ins. Co.,* 408 F.3d 130, 139 (3d Cir. 2005). The Court's analysis in *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.,* is instructive. 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005). There, an insurer alleged that defendants induced it pay more than $400,000 through the submission of hundreds of false insurance claims, but defendants moved to dismiss by arguing that the insurer's "reliance was unreasonable given the adversarial nature of the insurance claims process, and the availability to plaintiffs of a "plethora" of tools with which to deny claims." *Id.* at 14. The Court rejected defendants' argument because their "claim that any reliance by the plaintiffs was unreasonable is a question of fact and not one to be resolved on a motion to dismiss." *Id.*

As in *Olmecs,* federal courts across the country, including this one, have rejected similar reliance arguments in cases alleging systematic insurance fraud, concluding that the issue of reliance is a fact issue not properly resolved at the motion to dismiss stage. *See State Farm Mut. Auto. Ins. Co. v. Lincow*, 715 F. Supp. 2d 617, 634 (E.D. Pa. 2010) *aff'd,* 444 F. App'x 617 (3d Cir. 2011); *see also State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc*., No. CIV.A. 02-7389, 2005 WL 627969, at *4 (E.D. Pa. Mar. 14, 2005) (explaining Plaintiffs' justifiable reliance and injury are questions for the jury); *Allstate Ins. Co. v. Ahmed Halima*, No. 06-CV-1316

14

DLI/SMG, 2009 WL 750199, at *4 (E.D.N.Y. Mar. 19, 2009) (rejecting defendants' argument that "an insurance company that receives thousands of insurance claims could not reasonably rely on facially valid claims submitted by a licensed professional corporation and accompanied by reports from licensed physicians"); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04CV5045(ILG), 2008 WL 4146190, at *9 (E.D.N.Y. Sept. 5, 2008) (explaining that "issues of reasonable reliance" should not be resolved at the motion to dismiss stage); *Allstate Ins. Co. v. Lyons,* 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012); *Gov't Employees Ins. Co. v. Alrof, Inc.,* No. 11-CV-4028 SLT RER, 2013 WL 9600668, at *4 (E.D.N.Y. July 19, 2013) (explaining that "insurance companies are permitted to rely on 'facially valid' insurance claim forms submitted for reimbursement").

A more fundamental problem with Defendants' argument is that State Farm ***never*** alleged that any of the misrepresentations included in the Chiropractic records were either patent or obvious.  In fact, the paragraphs that Defendants cite actually contradict this characterization and allege that the fraudulent nature of the Chiropractic Records only appears when looking collectively at the records across the entire patient population, at which point the non-credible patterns emerge. *See* Mot. at 4 (citing Am. Compl. at ¶ 28 (explaining that "the chiropractic records ***collectively*** reveal pervasive patterns that are not credible ***across the patient population***")) (emphasis added); *see also* Mot. at 4-5 (citing ¶¶ 48, 50, 63).

Defendants attempt to buttress their position by taking parts of sentences out of context and deliberately leaving out language that does not support their theory.  For example, Defendants quote Paragraph 47 as stating that "These types of widespread and serious findings are not credible and highly implausible," but the full sentence actually states: "These types of widespread and serious findings are not credible and highly implausible ***across such a wide swath of patients***, for

15

whom age, pre-existing conditions, type of accident, mechanism of injuries, and a host of other important factors, vary markedly."  Am. Compl. at ¶ 47 (emphasis added).  Similarly, although Defendants quote Paragraph 52 as merely stating that "These types of pervasive patterns are not credible and highly implausible," the full sentence states "These types of pervasive patterns are not credible and highly implausible *across hundreds of patients, whose age, pre-existing conditions, mechanism of injuries, and a host of other important factors, very markedly*."  *Id*. at ¶ 52 (emphasis added).

In any event, the Amended Complaint describes, at length, that only when the Chiropractic Records are viewed together as a whole do the non-credible patterns emerge revealing their fraudulent nature.  *See, e.g.,* Am. Compl. at ¶¶ 28, 47, 48, 52, 63.  For example, State Farm alleges that Defendants submit Initial Examinations that "document false 'Objective' spinal examination findings and diagnoses."  *Id*. at ¶ 37.  In particular, State Farm alleges that rather than legitimately evaluating patients, Defendants document a predetermined catalog of findings and diagnoses, namely "moderate-to-severe joint dysfunctions, pain, and spasms across entire regions of the spine and in the pelvis."  *Id*. at ¶ 47.  But, contrary to Defendants' characterization, State Farm never alleges that the falsity of the findings and diagnosis is patently obvious, just by looking at an individual Initial Examination in isolation.  Indeed, it would be impossible for State Farm to know that Defendants almost always diagnose "moderate-to-severe joint dysfunctions, pain, and spasms across entire regions of the spine and in the pelvis . . . across a wide swath of patients, for whom age, pre-existing conditions, type of accident, mechanism of injuries, and a host of other important factors, vary markedly" just by looking at a single patient's Initial Examination.

In short, Defendants' argument finds no support in State Farm's Amended Complaint, and is actually contradicted by the allegations cited in the Motion to Dismiss.  Here, State Farm alleges

that the falsity of Defendants' bills and supporting documentation is not obvious on the face of any individual record or even the set of records from any individual patient.  It further alleges that it justifiably relied on these records because the fraudulent nature of the Chiropractic Records is revealed only when the bills and supporting documentation are viewed together as a whole.  These allegations are more than adequate to plead justifiable reliance.

### C.   State Farm's Causes Of Action Are Not Barred By The Statute Of Limitations.

Defendants' last argument is that the statute of limitations bars State Farm from recovering damages for any Chiropractic Records submitted prior to October 30, 2011.  Defendants further argue that the 4-year statute of limitations was not tolled, as a matter of law, because State Farm failed to meet its burden to allege that it exercised reasonable diligence in investigating the pre-October 30, 2011 Chiropractic Records.  *See* Mot. at 10.  Defendants further argue that State Farm could not meet its burden because, according to Defendants, the Amended Complaint alleges that the fraudulent nature of the Chiropractic Records was patent on the face of each individual record.

Defendants' argument simultaneously mischaracterizes the governing law and State Farm's Amended Complaint.  First, at the motion to dismiss stage, defendants (and not the plaintiffs) bear the burden of establishing a statute of limitations defense, including that the discovery rule does not apply as a matter of law.  Second, Defendants' position that the discovery rule, the fraudulent concealment doctrine, and the continuing violations doctrine do not apply runs squarely into the factual issue of whether State Farm was placed on sufficient inquiry notice to have discovered that it had been defrauded by Defendants prior to October 30, 2011.  But these factual disputes cannot be resolved on a motion to dismiss.  *See State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc.,* No. CIV.A. 02-7389, 2007 WL 3224542, at *4 (E.D. Pa. Oct. 23, 2007), *as amended* (Oct. 29, 2007) (reiterating that "whether a plaintiff has exercised due diligence in

17

discovering his own injury is usually a question for the jury"); *see also State Farm Mut. Auto. Ins. Co. v. Makris*, No. CIV.A. 01-5351, 2002 WL 826431, at *4 (E.D. Pa. Apr. 29, 2002).

> **1.** **Resolving The Statute Of Limitations Defense Is Inappropriate At The Motion To Dismiss Stage, Where Defendants Bear The Burden Of Establishing That The Discovery Rule Does Not Apply On The Face Of The Complaint.**

Defendants' statute of limitations argument hinges on their claim that "State Farm does not even attempt to offer facts which might establish reasonable diligence on its part" or would "justify a claim of the Continue Violations Doctrine." *See* Mot. at 11-12. But, contrary to Defendants' position, State Farm does not bear the burden of alleging that their claims are not barred by the statute of limitations. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (reiterating that litigants need not try to plead around affirmative defenses). Instead, defendants bear the heavy burden of showing that it is "apparent on the face of the complaint" that the statute of limitations bars the claims at issue. *Id*. Moreover, "when the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." *Id.* (internal citation omitted).

Importantly, in *Schmidt*, the Third Circuit reiterated that at the pleading stage, a plaintiff need not "affirmatively show that he exercised 'reasonable diligence' with respect to discovering his injury" in order to invoke the discovery rule. *Schmidt*, 770 F.3d at 252. Indeed, in *Schmidt*, the Third Circuit reversed the dismissal on this basis. In particular, the district court had dismissed plaintiff's complaint "for failing to affirmatively show that he exercised 'reasonable diligence' with respect to discovering his injury." *Id*. The Third Circuit reversed, explaining that requiring the plaintiff to allege "reasonable diligence" at the pleading stage was premature. *Id*. (reiterating that plaintiffs need not "plead around an affirmative defense"). The Court further explained that "while a court may entertain a motion to dismiss on statute of limitations grounds . . . it may not

allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Id*. at 251.

Here, as in *Schmidt*, State Farm was not obligated to plead around Defendants' statute of limitations argument. And, because the Amended Complaint does not demonstrate, as a matter of law, whether the discovery rule applies (and therefore when the limitations period began to run), "the statute of limitations cannot justify Rule 12 dismissal." *Schmidt*, 770 F.3d at 251. Moreover, as further described below, State Farm has alleged that, despite exercising reasonable diligence, it could not have discovered the fraudulent nature of the Chiropractic Records because they appeared legitimate on their face and Defendants took affirmative steps to conceal their fraud scheme.

      **2.**      **Defendants Fail To Meet Their Burden To Demonstrate That The Discovery Rule, The Fraudulent Concealment Doctrine, And The Continuing Violations Doctrine Do Not Apply On The Face Of The Amended Complaint.**

The applicability of the statute of limitations cannot normally be resolved at the motion to dismiss stage because it implicates factual questions regarding when the plaintiff discovered or should have discovered the elements of the cause of action. *Jodek Charitable Trust, R.A. v. Vertical Net, Inc.,* 412 F.Supp.2d 469 (E.D.Pa.2006) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd*., 181 F.3d 410, 425 (3d Cir.1999)). That is because whether or not a plaintiff knew or should have known of a fraud scheme is a quintessential fact issue for a jury to resolve not appropriate for a motion to dismiss. *See State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc.,* No. CIV.A. 02-7389, 2007 WL 3224542, at *4 (E.D. Pa. Oct. 23, 2007), *as amended* (Oct. 29, 2007) (reiterating that "whether a plaintiff has exercised due diligence in discovering his own injury is usually a question for the jury"); *State Farm Mut. Auto. Ins. Co. v. Makris*, No. CIV.A. 01-5351, 2002 WL 826431, at *4 (E.D. Pa. Apr. 29, 2002). Indeed, to

prevail, Defendants would have to show that State Farm's allegations show, as a matter of law, that State Farm knew or should have known that the Chiropractic Records were fraudulent as soon as it received them (thereby starting the clock on the statute of limitations). *Schmidt,* 770 F.3d at 251. Defendants have not, and cannot, meet this burden.

Here, Defendants' position that the discovery rule does not apply rests entirely on their unsupported contention that State Farm has alleged that the falsity of the Chiropractic Records was patently obvious on the face of the records (and, therefore, State Farm knew or should have known their fraudulent nature as soon as it received them). *See* Mot. at 10. But, as detailed above, State Farm has never alleged that the falsity of Defendants' representation was obvious or patent. Rather, State Farm has consistently alleged that the falsity of Defendants' bills and supporting documentation is not obvious on the face of any individual record or even the set of records from any individual patient. Moreover, as detailed in the Amended Complaint, Defendants took affirmative steps, including using the WritePad software program, to conceal their fraud. Thus, only when the bills and supporting documentation are viewed and investigated together as a whole do the non-credible patterns emerge revealing the fraudulent nature of all the bills and supporting documentation. *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.,* No. 4:14-CV-11521, 2015 WL 4724829, at *20 (E.D. Mich. Aug. 10, 2015) (rejecting statute of limitations argument on a motion to dismiss where insurer alleged that fraudulent bills were "facially valid" because "questions of fact regarding Plaintiff's diligence and possible fraudulent concealment remain . . . preclude applying the statutes of limitations at this time").

To the extent that Defendants disagree with State Farm's allegations, this disagreement only further highlights the numerous factual issues implicated by their statute of limitations defense, which is why federal courts have consistently held that such arguments are inappropriate

to resolve at the motion to dismiss stage. *See State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc.,* No. CIV.A. 02-7389, 2005 WL 627969, at *4 (E.D. Pa. Mar. 14, 2005) (explaining that defendants' interpretation of an investigatory memo was just "an interpretation" and that it "is for the jury to decide" when "Plaintiffs knew or should have known of a cognizable claim against Defendants"); *see also State Farm Mut. Auto. Ins. Co. v. Makris*, No. CIV.A. 01-5351, 2002 WL 826431, at *4 (E.D. Pa. Apr. 29, 2002) (denying motion to dismiss on statute of limitations grounds); *State Farm Mut. Auto. Ins. Co. v. Kugler*, 2011 WL 4389915, at *13 (holding that limitations issues were "factual issues which the court cannot resolve on a motion to dismiss"); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 793 (E.D. Mich. 2015) (explaining that statute of limitations argument could not be resolved on a motion to dismiss because State Farm alleged that defendants' "fraudulent bills and documentation appeared legitimate on their face" and it "reasonably assumed that the Defendants were complying with their ethical obligation to act honestly and with integrity and therefore could not have discovered the fraudulent scheme until it was able to review hundreds of bills and documentation together"); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.,* No. 14-CV-10266, 2014 WL 5427170, at *7 (E.D. Mich. Oct. 24, 2014) (rejecting statute of limitations argument on motion to dismiss because defendants' argument that State Farm "should have known" that their medical records were fraudulent is "an argument that cannot be proved at this stage in the litigation"); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.,* No. 4:14-CV-11521, 2015 WL 4724829, at *20 (E.D. Mich. Aug. 10, 2015); *Allstate Ins. Co. v. Lyons,* 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012) ("emphatically reject[ing] notion" that insurer could not rely on "facially reasonably diagnoses and claims for payment"). At best, Defendants' argument that the discovery

rule was triggered is an issue of fact for jury. *Jacobs v. Halper*, 116 F. Supp. 3d 469, 482-3 (E.D. Pa. 2015).[2]

Finally, to the extent that Defendants suggest that State Farm was not entitled to rely on Defendants' submissions and, instead, was obligated to embark on a full scale investigation of each charge they have ever submitted from 2010 until the present, Defendants have failed to provide any authority for their position. Nor could they. Numerous courts, including the Third Circuit, have already held that an insurance company is entitled to rely on the honesty and integrity of the medical providers who submit claims. *United States v. Sherman,* 160 F.3d 967, 970 (3d Cir. 1998). For example, *Sherman* involved a medical provider who had been convicted of insurance fraud and had argued that he did not qualify for an abuse of trust sentencing enhancement because he was subject to oversight of the insurance company. *Id.* In rejecting this argument and affirming the abuse of trust enhancement, the Third Circuit dismissed the notion that it would be reasonable for an insurance company to investigate every claim that was submitted to it as a matter of course. *Id.* According to the Court, "[t]he insurance company could have had a second doctor shadow him and double check his diagnoses, but the expense would have been unreasonable." *Id.* ("Billing systems depend upon trust, and [the defendant] plainly took advantage of whatever honor system exists in the systems currently used for professional billing directed to insurance carriers for reimbursement."); *see also Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, 2013 WL 764735, at *5 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 765190 (E.D.N.Y.

---

[2] Defendants' contention that State Farm's allegations "eliminate the Continuing Violations Doctrine" as a means to toll the statute of limitations is equally baseless. Defendants' only support for their position is that State Farm fails to satisfy the "permanence" factor outlined in the district court's decision in *Mandel v. M & Q Packaging Corp.,* No. 3:09-CV-0042, 2011 WL 3031264, at *1 (M.D. Pa. July 25, 2011). Incredibly, Defendants neglect to mention that the Third Circuit reversed this district court opinion on the very point that Defendants now rely. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). In particular, the Third Circuit reversed the district court's decision after concluding that "permanency is not required to establish a continuing violation." *Id.* at 166. Thus, Defendants' attempt to rely on the "permanence" prong is frivolous.

Feb. 28, 2013) (explaining that insurance companies are also permitted to rely on "facially valid" insurance claim forms submitted for reimbursement"); *United States v. Hoogenboom,* 209 F.3d 665, 671 (7th Cir. 2000) (explaining that third-party payor relies "on a presumption of honesty when dealing with statements received from medical professionals"); *United States v. Skodnek,* 933 F. Supp. 1108, 1119 (D. Mass. 1996); *United States v. Iloani*, 143 F.3d 921, 923 (5th Cir. 1998) (concluding that the district court was entitled to conclude "that insurance companies usually rely on the honesty and integrity of physicians in their medical findings, diagnoses, and prescriptions for treatment or medication"); *Allstate Ins. Co. v. Lyons,* 843 F. Supp. 2d 358, 375 (E.D.N.Y. 2012) ("Allstate was entitled to rely on the representations that defendants made to it").

## V.     CONCLUSION

As more fully described above, Defendants' arguments have no basis in either the facts of this case or the binding authority.  Here, State Farm's Amended Complaint adequately alleges that Defendants submitted thousands of false Chiropractic Records to fraudulently induce State Farm to pay their charges.  State Farm justifiably relied on the Chiropractic Records and could not have discovered the fraudulent nature of Defendants' submission until it was well-within the statute of limitations.  By contrast, Defendants' arguments rely on a wholesale revision of State Farm's Amended Complaint and, therefore, should be rejected.

### *GOLDBERG, MILLER & RUBIN, P.C.*

By: _____/s/_____
RICHARD M. CASTAGNA, ESQUIRE
Attorney for Plaintiffs

By: _____/s/_____
MATTHEW MORONEY, ESQUIRE
Attorney for Plaintiffs

DATED:   April 4, 2016

23

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

STATE FARM MUTUAL AUTOMOBILE : 
INSURANCE COMPANY : 
  and : 
STATE FARM FIRE AND CASUALTY : 
COMPANY, :  **CIVIL ACTION**
             :   **No.  2:15-cv-05929**
Plaintiffs, : 
             : 
  v. : 
             : 
LEONARD STAVROPOLSKIY, P.T., D.C., : 
JOSEPH WANG, P.T., D.C., EASTERN : 
APPROACH REHABILITATION, LLC and : 
AQUATIC THERAPY OF CHINATOWN, INC.,: 
             : 
Defendants. : 
             :

---

## CERTIFICATE OF SERVICE

I, Matthew Moroney, Esquire, do hereby certify that service of a true and correct copy of the within Plaintiffs' Response to Defendants' Motion to Dismiss the Amended Complaint has been forwarded to all counsel of record and the last known addresses of the unrepresented parties by way of First Class United States Mail, postage pre-paid, and/or electronic mail.

           Respectfully submitted,

           ***GOLDBERG, MILLER & RUBIN, P.C.***

     By:  __**mm6572**_____
         MATTHEW MORONEY, ESQUIRE
         RICHARD M. CASTAGNA, ESQUIRE
         Attorneys for Plaintiffs

Dated: <u>April 4, 2016</u>