## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et. al.** | : | **CIVIL ACTION** No. **2:15-cv-05929** |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **LEONARD STAVROPOLSKIY, P.T., D.C., et. al.** | : | |
| | | |
| **EASTERN APPROACH REHABILITATION, LLC, et. al.** | : | **CIVIL ACTION** No. **2:16-cv-01374** |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | : | |

## ORDER

**AND NOW,** this _____ day of _____, 2018, upon consideration of Plaintiffs'

Motion for Partial Summary Judgment, it is hereby **ORDERED** that Plaintiffs' Motion is

**GRANTED** and Defendants' claim for treble damages is **DISMISSED**.

_____
The Honorable J. Curtis Joyner

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et. al. | : | CIVIL ACTION No. 2:15-cv-05929 |
| v. | : | JURY TRIAL DEMANDED |
| LEONARD STAVROPOLSKIY, P.T., D.C., et. al. | : | |

| | | |
|---|---|---|
| EASTERN APPROACH REHABILITATION, LLC, et. al. | : | CIVIL ACTION No. 2:16-cv-01374 |
| v. | : | JURY TRIAL DEMANDED |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, by and through their attorneys, Goldberg, Miller & Rubin, P.C., hereby move for Partial Summary Judgment and aver as follows:

## I.  INTRODUCTION

1.  Plaintiffs respectfully request that Eastern Approach Rehabilitation, LLC, Aquatic Therapy of Chinatown, Inc., Dr. Joseph Wang and Dr. Leonard Stavropolskiy ("Defendants") be precluded from seeking treble damages under Section 1797 of the Motor Vehicle Financial Responsibility Law ("MVFRL"). In order to obtain treble damages, Defendants must prove, by clear and convincing evidence, that Plaintiffs acted "wantonly"; i.e. lacked a reasonable basis for denying Defendants' bills and recklessly disregarded its lack of a reasonable basis in denying the claim. Thus far, however, Defendants have failed to produce any evidence to suggest that Plaintiffs acted "wantonly," and have instead relied on conjecture and bald assertions to advance an

1

unfounded conspiracy theory against Plaintiffs. When specifically asked to provide this information during discovery, Defendants admitted they had no personal knowledge of any alleged "wanton" conduct. Defendants also conceded that whatever "facts" they purport to have to support their "wanton" conduct claim came from their attorney. They specifically (and improperly) asserted attorney-client privilege and refused to provide any facts which allegedly support their claim. Having failed to produce *any* evidence, Defendants cannot satisfy their heightened burden to overcome summary judgment in claims of "wanton" conduct. Accordingly, Defendants' claim for treble damages should be dismissed.

## II.  BACKGROUND

2.     Plaintiffs filed this action alleging, *inter alia*, that Defendants fabricated chiropractic records to fraudulently induce payments from Plaintiffs and artificially inflate the value of their patients' personal injury claims. Plaintiffs' Amended Complaint details, with particularity, Defendants' fraudulent scheme. (*See Exhibit "A" for the Amended Complaint*).

3.     Rather than file a counterclaim, Defendants opted to file a separate action in the Court of Common Pleas of Philadelphia County (hereinafter the "State Court Action") alleging that 1) Plaintiffs "wantonly violated Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701, et. seq. ("MVFRL")," and 2) Plaintiffs "intentionally and unlawfully interfered with the economic relationship between [Defendants] and their patients." (*See Exhibit "B" for the Complaint in the State Court Action*).

4.     After the State Court Action was removed to federal court, Defendants' tortious interference claim was dismissed as "wholly insubstantial and frivolous" and their sole remaining count for "violation of the MVFRL" was consolidated with Plaintiffs' case. (*See Exhibit "C" for this Court's June 1, 2016 Memorandum and Order in the State Court Action*).

5.     In the State Court Action, Defendants alleged, *inter alia*, that Plaintiffs "crafted and honed a business strategy of attacking and undermining the credibility of doctors who treat auto patients" in an effort to "manufacture an excuse to deny any and all payments to a targeted medical provider, as well as intimidate other medical providers throughout the region into providing less care lest they find themselves on [Plaintiffs'] enemy list." (***See Exhibit "B" at ¶'s 7 and 17***).

6.     During discovery, Plaintiffs asked Defendants to "[i]dentify any and all witnesses, facts and documents supporting your contentions and allegations in the [State Court Action]." (***See Exhibit "D" for Plaintiffs' First Set of Interrogatories to Defendants at ¶ 9***). Defendants responded by claiming:

> The facts and documents which support the contentions of the Eastern Approach entities against State Farm are identified in the voluntary disclosures and discovery responses provided by the Eastern Approach entities. Further, witnesses, facts and documents supporting the contentions of the Eastern Approach entities will be found as well in the materials specifically demanded to be produced in the Request for Production of Documents submitted to State Farm by the Eastern Approach entities and to which State Farm has yet to respond. Also, see the documents identified by the Eastern Approach Entities in response to State Farm's Request for Production of Documents. This response will be supplemented as necessary based on State Farm's document production and discovery responses.

(***See Exhibit "E" for Joseph Wang's Response to Plaintiffs' First Set of Interrogatories at ¶ 9***).

7.     On November 28, 2016, Plaintiffs' counsel wrote defense counsel and correctly noted that this response was "generally, a non-answer." Plaintiffs' counsel added that "[i]f there are any witnesses that may be called in support of Defendants' claim against State Farm, Defendants must specifically identify those individuals." (***See Exhibit "F" for Plaintiffs' counsel's November 28, 2016 letter to defense counsel at p. 3***).

8.     In response, defense counsel noted that "we obviously have not determined which witnesses we will call to trial. However, the universe of individuals who may be called is identified

in the answer provided." *(See Exhibit "G" for defense counsel's December 9, 2016 letter at p. 2).*

9.      On December 19, 2016, Plaintiffs' counsel again pointed out that "[y]our clients have not provided any <u>facts</u> in their voluntary disclosures or discovery responses supporting your contentions or allegations in [the State Court Action]…" Plaintiffs' counsel added that "Plaintiffs are entitled to know what information or facts the witnesses have or possess regarding your clients' allegations and averments.  Please identify these facts to the extent they exist." *(See Exhibit "H" for Plaintiffs' counsel's December 19, 2016 letter at p. 2).*

10.      Approximately six months later, on or around June 16, 2017, Defendants supplemented their response and provided a three-paged single-spaced response which essentially reiterated the conclusory allegations in the State Court Action Complaint.  This response yields no legitimate or substantive factual support for these allegations. *(See Exhibit "I" for Defendants' Supplemental Response at ¶ 9).*

11.      In an effort to explore these allegations further, Plaintiffs' counsel questioned Defendants under oath regarding the specific averments made in the State Court Action Complaint.

12.      Defendant, Joseph Wang, D.C., for example, was asked to review the State Court Action Complaint and provide any factual support for the allegations contained in paragraphs 7 through 18.  In response, Dr. Wang claimed that he could not answer the questions without disclosing communications between himself and his attorney.  For example, Dr. Wang testified:

> Q. Paragraph 7 states that beginning in 1986 and continuing through the present, State Farm has crafted and honed a business strategy of attacking and undermining the credibility of doctors who treat auto accident patients.  Did I read that paragraph correctly?
>
> A. Yes.

Q. Now, excluding communications between – with your attorney, are you aware of any facts or evidence to that supports this statement that is made in paragraph 7?

MR. BARATTA: Objection to the form.

THE WITNESS: I rely on my attorney's advice and information.

. . .

Q. Are you saying you cannot answer that question with – without getting into communications with Mr. Baratta?

A. That's correct.

**(See Exhibit "J" for Dr. Wang's March 3, 2017 deposition transcript at pp. 92-93).**

13.     Ultimately, Dr. Wang had no personal knowledge regarding the averments in the State Court Action Complaint and allegedly could not provide any factual support for the allegations without disclosing attorney-client communications, which he refused to do. In other words, the only information he purportedly had regarding the allegations came from his attorney. **(See Exhibit "J" at pp. 91-101).**

14.     Months later, Dr. Wang testified again as Defendants' corporate designee. Although the Plaintiffs' Deposition Notice asked Dr. Wang to prepare to discuss "[t]he testimony, facts and documents that support the claim(s) for damages in [the State Court Action]," Dr. Wang once again invoked the attorney-client privilege and refused to answer questions regarding the allegations in the State Court Action Complaint. For example, Dr. Wang was asked:

Q. You said your attorney told you certain things in confidence. Are you invoking the attorney-client privilege not to tell me what your attorney told you in confidence?

A. Yes. Hence confidence.

Q. Please provide me with all facts that support your claim that beginning – that beginning in 1986 and continuing through the present, State Farm

has crafted and honed a business strategy of attacking and undermining the credibility of doctors who treat auto accident patients?

A. Same answer.

Q. Okay. Who is McKinsey and Company?

A. That's something that my attorney, I think, has told me this one in confidence.

     MR. BARATTA: Well, don't talk about what we have talked about.

     WITNESS: Right. So I am not going to talk about that one.

Q. So you are invoking the attorney-client privilege with respect to that answer?

A. Yes.

Q. Do you know who McKinsey and Company is, outside any communication you had with your counsel?

A. No.

*(See Exhibit "K for Dr. Wang's August 24, 2017 deposition transcript at pp. 461-462).*[1]

     15.    Defendant, Leonard Stavropolskiy, D.C. was also asked to provide factual support for the allegations in the State Court Action Complaint. Like Dr. Wang, Dr. Stavropolskiy claimed that any information he had regarding these allegations came from his attorney. He also invoked the attorney-client privilege and was instructed not to answer any questions regarding the specific averments in the State Court Action Complaint. *(See Exhibit "L" for Dr. Stavropolskiy's March 23, 2017 deposition transcript at pp. 54-67).*

     16.    The discovery period expired on August 31, 2017.

---

[1] As the transcript reflects, Plaintiffs' counsel repeatedly asked Defendants' corporate designee, Dr. Wang, to provide any factual support for the allegations in the State Court Action. In response, Dr. Wang invoked the attorney-client privilege and was instructed not to answer the questions. *(See Exhibit "K" at pp. 459-470).*

17.     Despite Plaintiffs' repeated requests, Defendants never provided any factual support for the contentions contained the State Court Action Complaint. Worse, Defendants refused to answer any questions regarding Plaintiffs' alleged "business strategy of attacking and undermining the credibility of doctors who treat auto patients" claiming that any facts supporting this allegation are "privileged."

18.     Now, Defendants seek treble damages against Plaintiffs for alleged "violations of the MVFRL." In order to do obtain these damages, however, Defendants must prove that Plaintiffs acted "wantonly." See 75 Pa.C.S.A. § 1797(b)(4) ("conduct considered to be wanton shall be subject to a payment of treble damages to the injured party").

19.     Because Defendants failed to produce any evidence of "wanton" conduct, their claim for treble damages should be dismissed.

## III.   STANDARD FOR SUMMARY JUDGMENT

20.     "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56 (a). A motion for summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Larkin v. Methacton Sch. Dist., 773 F. Supp. 2d 508, 521 (E.D. Pa. 2011) quoting Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).

21.     Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a *genuine issue for trial*." Larkin, 773 F. Supp. 2d at 521

(emphasis original). Although the nonmoving party has the benefit of all "justifiable inferences," he may not rely "merely upon bare assertions, conclusory allegations or suspicions" to defeat a motion for summary judgment. Id. quoting Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Furthermore, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 (3d Cir. 1990). Accordingly, "a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial." Fleming v. CNA Ins. Co., 52 F. Supp. 2d 499, 501 (E.D. Pa. 1999).

## IV. ARGUMENT

### A. Defendants' Cannot Establish That Plaintiffs Acted "Wantonly" as a Matter of Law

22.     Defendants' claim for treble damages is not supported by any evidence. Treble damages are available under Section 1797 of the MVFRL only if Defendants prove that 1) they submitted bills for reasonable and necessary treatment, 2) Plaintiffs did not challenge the bills before a Peer Review Organization ("PRO")[2], and 3) Plaintiffs' conduct was "wanton." 75 Pa.C.S. § 1797(b)(4). Although there is a factual dispute regarding the first element (since Plaintiffs contend that Defendants' treatment was neither reasonable nor necessary), there is no evidence to support the third element.

23.     Although the MVFRL does not define "wanton" conduct, courts have held that it is analogous to "bad faith" conduct. See e.g. Rudisill v. Cont'l Ins. Co., No. CIV. A. 00-CV-1603, 2001 WL 1167498, at *2 (E.D. Pa. Sept. 13, 2001) ("[t]he various definitions of wanton and bad

---

[2] As the Pennsylvania Supreme Court noted in Terminato v. Pennsylvania Nat. Ins. Co., 645 A.2d 1287 (Pa. 1994), "[t]he peer review process is a mechanism through which an insurer may seek a professional assessment of the reasonableness and necessity of medical treatment in order to independently determine whether a claim should be paid or denied. It assists insurers in making an informed decision regarding a medical claim by mandating review by a medical professional when the claim is challenged by the insurer. Section 1797(b) is a cost containment provision, not an alternative dispute resolution procedure."

faith do not track one another exactly, but their meanings are very similar") citing Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 67 (3d Cir. 1994). While "wanton" conduct requires a showing that the actor "recklessly ignores the other person's peril," "bad faith" requires a showing that an insurer "recklessly disregarded its lack of a reasonable basis in denying the claim." Rudisill, 2001 WL 1167498 at *2 citing Morrison v. Mountain Laurel Assurance Co., 748 A.2d 689, 691-92 (Pa. Super. 2000). "Wanton and bad faith may be equated, because intentionally doing an unreasonable act (acting wantonly) is the equivalent of knowingly ignoring a lack of a reasonable basis for a denial (acting in bad faith)". Id.

24.    Since "wanton" conduct and "bad faith" conduct can be equated, Defendants have a high burden to overcome summary judgment in this case. In Pennsylvania, "bad faith must be proven by clear and convincing evidence and not merely insinuated." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994). To prove bad faith, a party must show that an insurer "(1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 522 (3d Cir. 2012). In the context of summary judgment, the nonmoving party has a burden which is "commensurately high in light of the substantive evidentiary burden at trial." Post, 691 F.3d at 523 quoting J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004). Thus, when considering whether to dismiss allegations of bad faith against an insurer, "summary judgment [in favor of the insurer] is appropriate when there is no clear and convincing evidence that [its] conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Post, 691 F.3d at 523 citing Bostick v. ITT Hartford Grp., 56 F.Supp.2d 580, 587 (E.D. Pa. 1999).

i.    Defendants Have No Evidence that Plaintiffs Acted "Recklessly"

25.    As a threshold matter, Defendants cannot show that Plaintiffs "knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Post, 691 F.3d at 523. This is because there is no such evidence in this case. Instead, Defendants rely on unsubstantiated claims like Plaintiffs denied Defendants' bills "as part of [Plaintiffs'] larger business strategy of attacking doctors who treat auto accident patients as a means to drive down claim expenses." (*See Exhibit "B" at ¶ 34*). This claim, and those like it, are based on conjecture and not supported by any evidence. Accordingly, summary judgment on Defendants' treble damages claim is appropriate. See Robertson., 914 F.2d at 382 ("an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment").

26.    As noted above, Plaintiffs repeatedly asked Defendants to provide factual support for their allegation that Plaintiffs "crafted and honed a business strategy of attacking and undermining the credibility of doctors who treat auto patients" in an effort to "manufacture an excuse to deny any and all payments to a targeted medical provider, as well as intimidate other medical providers throughout the region into providing less care lest they find themselves on [Plaintiffs'] enemy list." (*See Exhibit "B" at ¶'s 7 and 17*). In response, Defendants failed to produce any evidence to suggest that there is any truth to these accusations. Worse, when questioned directly about these allegations at their depositions, Defendants admitted they had no firsthand knowledge to support their claims and testified that any information they had was "privileged" because it came directly from their attorney *and no other source*. See ¶'s 12-15. Since Defendants' decided to improperly withhold this information from Plaintiffs during discovery by invoking the attorney-client privilege, Defendants are left with *no* evidence to support their claim that Plaintiffs acted "wantonly" in this case.

27.     Furthermore, Defendants' unsupported suggestion that Plaintiffs' Special Investigative Unit ("SIU") was "overzealous" and maintained a so-called "enemies list", not only lacks any factual support, it runs headlong into Pennsylvania's statutory immunities for insurance fraud investigations. The mere fact that Plaintiffs investigated Defendants for fraud does not mean that Plaintiffs acted "recklessly." Not only did Plaintiffs' investigation prove fruitful in this case (as described more fully in the Amended Complaint), Plaintiffs cannot be held liable merely for investigating potentially fraudulent conduct. Plaintiffs, like every other insurer operating in Pennsylvania, is *required* to investigate fraud and is afforded conditional immunity for acts undertaken in furtherance of such investigations. See 75 Pa.C.S.A. § 1811 (requiring every insurer to "maintain a motor vehicle insurance antifraud plan"); 75 Pa.C.S.A. § 1815 (imposing penalties on insurers who fail to follow the antifraud plan); and 75 Pa.C.S.A. § 1818, 40 P.S. § 325.47(a), and 40 P.S. § 474.1 (providing immunity to insurers who provide information to federal, state, or local law enforcement). Pennsylvania courts have also recognized that public policy encourages insurance companies to investigate potential fraud. See, *e.g.*, Chicarella v. Passant, 494 A.2d 1109, 1113 (Pa. Super. Ct. 1985) (noting that "[i]t is also in society's best interest for valid insurance claims to be ascertained and fabricated claims exposed"); see also Forster v. Manchester, 189 A.2d 147, 150 (Pa. 1963) (finding conditional privilege existed immunizing insurance company from invasion of privacy liability for following and documenting the movements of an injured claimant). Accordingly, Defendants' attempt to mischaracterize Plaintiffs' legitimate investigatory practices as "reckless" or "wanton" is without merit.

ii.     Plaintiffs Had a Reasonable Basis to Deny Defendants' Bills

28.     In order to obtain treble damages against Plaintiffs, Defendants must also prove that Plaintiffs lacked a reasonable basis to deny the bills at issue in the State Court Action. Post,

691 F.3d at 523. Defendants cannot meet this burden by simply challenging the factual basis for Plaintiffs' decision, or by claiming, as they did in the State Court Action Complaint, that Plaintiffs had "no reasonable basis for its denial of bills for treatment and services rendered by [Defendants]." See Smith v. Allstate Ins. Co., 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) ("To defeat a claim of bad faith an insurer need not show that the insurer was correct; rather, an insurer must demonstrate that it had a reasonable basis for its decision to deny benefits); see also Larkin, 773 F. Supp. 2d at 521 (nonmoving party cannot overcome summary judgment on "bare assertions" or "conclusory allegations") *(See Exhibit "B" at ¶ 47)*. Rather, Defendants must show that there is clear and convincing evidence that Plaintiffs acted unreasonably. J.C. Penney Life Ins. Co., 393 F.3d at 367.

29.     In this case, Plaintiffs denied bills *after* they filed this lawsuit alleging, with particularity, that Defendants were engaged in widespread fraud. Not only did Plaintiffs have a bona fide belief that Defendants' bills were fraudulent, Plaintiffs also believed (and continue to believe) that these bills are in dispute in this case. Although Defendants generally deny that they committed fraud, this does not change the fact that Plaintiffs' had a reasonable basis to deny Defendants' bills under the circumstances. As noted above, Defendants cannot overcome summary judgment on their "wanton" conduct claim simply by denying the allegations against them, they must show that there is clear and convincing evidence on the record that Plaintiffs' acted unreasonably in denying bills which were submitted *after* this lawsuit was filed and which fit the pattern of fraud described in the Amended Complaint. Id. To date, Defendants have not produced any legitimate evidence – let alone clear and convincing evidence – that Plaintiffs' belief

was unreasonable. In fact, all the evidence produced thus far shows that Plaintiffs had a good faith basis to bring this lawsuit to challenge the validity of Defendants' bills.[3]

## B. Defendants Cannot Rely on Evidence Which Was Improperly Withheld During Discovery

30.     Even if, *in arguendo*, Defendants had some evidence to show that Plaintiffs acted "wantonly," Defendants refused to disclose this evidence during discovery despite Plaintiffs' repeated requests. As noted above, Defendants improperly asserted the attorney-client privilege when asked to provide *factual* support for the allegations contained in the State Court Action Complaint. It is well-established that the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. 383, 395 (1981). Thus, if Defendants' counsel did provide Defendants with information to support the allegations in the State Court Action Complaint, then Defendants were obligated to disclose this information during discovery. See In re Linerboard Antitrust Litig., 237 F.R.D. 373, 384 (E.D. Pa. 2006) ("[t]here is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel") quoting Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co., 137 F.R.D. 267 (D.Neb. 1989).

31.     Rule 37 states that "[f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

---

[3] As detailed more thoroughly in the Amended Complaint, Plaintiffs filed suit in this case after observing non-credible patterns in Defendants' records which show that Defendants' treatment is predicated on false and fabricated physical examination findings. Although Defendants moved to dismiss the Amended Complaint arguing, *inter alia*, that it lacked specificity, this Court denied Defendants' motion. In other words, Plaintiffs were able to successfully plead, with specificity, that Defendants were engaged in fraud. This fact alone should be sufficient to show that Plaintiffs had a good faith belief that they were being defrauded when they denied Defendants' bills.

harmless." F.R.C.P. 37(c)(1). In this case, Defendants withheld facts which allegedly support their State Court Action claim by improperly asserting the attorney-client privilege. Since this was impermissible, Defendants are precluded from relying on this information "on a motion, at a hearing, or at a trial." Id. Thus, Defendants cannot rely on this information to oppose Plaintiffs' Motion for Partial Summary Judgment.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter the attached Order and dismiss Plaintiffs' claim for treble damages.

Respectfully submitted,
**GOLDBERG, MILLER & RUBIN, P.C.**

By: _____/s/_____
RICHARD M. CASTAGNA, ESQUIRE
MATTHEW A. MORONEY, ESQUIRE
WARREN HOLLAND, ESQUIRE
Attorneys for Plaintiffs

DATED: 2/15/18