**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 15-05929 |
| | : | |
| LEONARD STAVROPOLSKIY, PT., D.C., et al. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| EASTERN APPROACH REHABILITATION LLC, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 16-01374 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**JOYNER, J.**                                    **September 25, 2018**

Presently before the court for consideration are Defendants' Motion for Summary Judgment (Doc. 96-2), Plaintiffs' Response thereto (Doc. 100), Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. 104), Plaintiffs' Sur-Reply to Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. 109),

1

as well as Plaintiffs' Motion for Partial Summary Judgment (Doc 97), Defendants' Response thereto (Doc. 98), Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment (Doc. 105), and Defendants' Sur-Reply to Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment (Doc. 108). As we explain in the paragraphs that follow, Defendants' Motion for Summary Judgment is DENIED and Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

## I. FACTUAL BACKGROUND

This case arises from allegations of a complex scheme of medical insurance fraud to induce payment by the insurer. Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (State Farm), allege insurance fraud under 18 Pa.C.S.A. §4117 et. seq. and common law fraud, by Eastern Approach Rehabilitation, LLC ("Eastern Approach"); Aquatic Therapy of Chinatown, Inc. ("Aquatic Therapy"); Leonard Stavropolskiy, P.T., D.C. ("Stavropolskiy); and Joseph Wang, P.T., D.C. ("Wang"), Defendants. Plaintiffs claim Defendants defrauded them by "1) failing to legitimately examine patients, 2) creating records with pre-determined findings rather than properly recording what transpired during examinations, and 3) providing the same treatment for nearly every patient, regardless of whether or not it was medically

necessary." State Farm Mut. Auto. Ins. Co. v. Stavropolskiy,
2016 WL 2897427, at *3 (E.D. Pa. May 18, 2016), (Doc. No. 28).
Plaintiffs also allege Defendants deliberately concealed their
fraud in order to induce payment by using the software "Write
Pad."  Defendants allegedly used "WritePad" to make their
"observations, diagnoses, and treatment appear to vary from
patient to patient" when the language was falsified by a cut and
paste method of record entry.  Id. at 3.  Plaintiffs allege
statutory insurance fraud, common law fraud, and unjust
enrichment by Defendants, and they seek damages, restitution and
a declaratory judgment.  Id. at 4.  Defendants contend that
Plaintiffs discovered the alleged fraud before the commencement
of the limitations period and that Plaintiffs could not,
therefore, have reasonably relied on Defendants'
misrepresentations in making insurance payments.  Defendants ask
the Court to grant summary judgment on all counts.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  A court must construe "all evidence. . . .in the
light most favorable to the party opposing summary judgment"
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986) and "draw
all reasonable inferences in that party's favor."  Burton v.

Teleflex, Inc. 707 F.3d 417, 425 (3d Cir. 2013). The burden is on the moving party to demonstrate that "the evidentiary record presents no genuine issue of material fact," Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015). To survive a motion for summary judgment and proceed to the jury, the non-movant must establish a genuine issue of material fact. Matushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 575 (1986). Determining whether an issue of fact is material and genuine, we assess whether it "'affects the outcome of the suit under the governing law and could lead a reasonable jury to return a verdict in favor of the nonmoving party.'" Parkell v. Danberg, 833 F.3d 313 (3d. Cir. 2016) (quoting Willis, 808 F.3d at 643; Anderson, 477 U.S. at 248).

**III. Discussion**

Defendants assert three arguments for summary judgment. First, Defendants argue that Plaintiffs' claim for relief under Statutory Insurance Fraud is barred by the statute of limitations. Second, Defendants argue Plaintiffs' claim for relief under common law fraud is barred because Plaintiffs cannot prove they 'justifiably relied' on Defendants' records and therefore were not fraudulently induced to make payments. Third, Defendants raise the affirmative defense of laches on the grounds that they were prejudiced by Plaintiffs' 'inexcusable delay' in bringing this fraud action.

4

*A. Statutory Insurance Fraud*

Plaintiffs allege Defendants committed Statutory Insurance Fraud under 18 Pa.C.S.A. §4117 et. seq. by submitting "false, fraudulent, incomplete and/or misleading information concerning facts material to. . .insurance claims." (Pl. Am. Comp. at 28, Doc. No. 20). Defendants argue that Plaintiffs' allegations of statutory fraud, pertaining to payments made before October 30, 2013, are barred by the two-year statute of limitations. Pa.C.S.A. §5524 (7). The two-year period may be tolled in certain circumstances. "[A]lthough the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured. In such cases the statute of limitations does not begin to run at the instant the right to institute suit attaches, rather the discovery rule. . . tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been created by another party's conduct." Crouse v. Cyclops Industries, 745 A.2d 606, 612 (Pa. 2000). Additionally, the doctrine of fraudulent concealment may toll the statute of limitations "if through fraud or concealment, [the defendant] causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. Fine v. Checcio, 870 A.2d 860 (Pa. 2005). "[I]t is for the jury to say whether the remarks

that are alleged to constitute the fraud or concealment were made." Id.

The time at which Plaintiffs knew or reasonably should have known of the alleged fraud is a material issue of fact in this case because whether the statute of limitations will be tolled depends on this question. See id. at 863 (At summary judgment, the relevant question is "whether there are genuine issues of material fact as to whether [Plaintiff] knew or was unable to know, despite the exercise of reasonable diligence, that [Plaintiff] was injured"). This material issue is inappropriate for summary judgment because, "the point at which the complaining party should reasonably be aware that he has suffered injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors." Id. (quoting White v. Owens-Corning Fiberglas Corp., 668 A.2d 136, 144 (1995), (quoting Petri v. Smith, 453 A.2d 342, 347 (Pa. Super. 1982))). E.g., Longbottom v. Hayman, 2018 WL 3831393, slip op. at 2 (E.D. Pa. August 13, 2018)("'[T]he point of time at which the injured party should reasonably be aware that he…has suffered an injury is generally an issue of fact to be determined by the jury…'" (quoting Downey v. First Indem. Ins., 214 F.Supp. 3d 414, 429 (E.D. Pa. 2016) (quoting Knopick v. Connelly, 639 F.3d 600, 611 (3d Cir. 2011)); see Schmidt v. Skolas, 770 F.3d 241, 251 (3d Cir. 2014) (quoting Crouse v.

Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000) ("[O]nly where the facts are so clear that reasonable minds *cannot differ* may the commencement of the limitations period be determined as a matter of law").

Defendants argue that the statute of limitations should not be tolled under the "discovery rule" or the doctrine of "fraudulent concealment." Fine, 870 A.2d at 859. Although "the determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide," Wilson v. El-Daief, 964 A.2d 354, 362 (Pa. 2009), Defendants argue there is no genuine dispute that Plaintiffs knew or reasonably should have known of the alleged fraud before October 30, 2015. However, Plaintiffs claim they were unable to discover the alleged fraud until, after examining the totality of Defendants' records, receiving help from legal counsel and a pre-suit medical expert trained to discern record falsification, they were able to identify "evidence of the pervasive and fraudulent patterns." (Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot. for Summ. J., at 12, Doc. No. 100; Pl.'s S.R. to Def.'s R. to Pl.'s Resp. to Def.'s Br. in Supp. of Mot. for Summ. J., at 2, Doc. No. 109).

Defendants present their argument for summary judgment against the statutory insurance fraud claim in four stages; each stage tries to establish that indisputably, Plaintiffs knew or

should have known of the alleged fraud before October 30, 2015.
(Def.'s Br. in Supp. of Mot. for Summ. J. at 32, Doc. No. 96-2).
In the first stage of their argument for summary judgment on the
commencement of the limitations period, Defendants show evidence
that between 2005 and 2010, Plaintiffs referred claims involving
Defendants to State Farm's fraud investigation unit (SIU); that
Plaintiffs took note when attorney Adrien Reid represented a
claimant because Reid was known by Plaintiffs to "solici[t]
accident victims;" that Plaintiffs referred Defendants' claims
to the law firm Goldberg, Miller & Rubin; and that Plaintiffs
questioned Defendant Wang about his use of the WritePad
software.  Id. at 5-8.  Defendants argue this evidence
establishes beyond dispute when Plaintiffs knew or should have
known of the alleged fraud.  Yet Defendants impermissibly rely
on inference: "The drawing of legitimate inferences from the
facts are jury functions, not those of the judge."  Thomas v.
Coopersmith, 663 F. App'x 120, 122 (3d Cir. 2016); see Robertson
v. Allied Signal, Inc., 914 F.2d 360, 382 (3d Cir. 1990) ("[a]n
inference based upon a speculation or conjecture does not create
a material factual dispute sufficient to defeat entry of summary
judgment").

Plaintiffs dispute that the mere handling of a claim by
their fraud investigation unit means they "knew" of the complex
fraud scheme before the commencement of the limitations period

in October, 2013.  "The [SIU] unit in fact simply handles claims
that may have suspicious indicators. . . .Defendants have not –
and cannot – show that the fact a claim is handled by SIU is
tantamount to a determination by [Plaintiffs] that 'fraud' has
occurred.'"  (Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot.
for Summ. J. at 17, fn. 2, Doc. No. 100).  A reasonable
factfinder, finding Plaintiffs' testimony credible, could
conclude that sending a claim to the fraud unit did not mean
Plaintiffs' investigators had "discovered" the alleged fraud
scheme.  Plaintiffs have established that this fact is genuinely
disputed and relies on credibility determinations.  See e.g.
Thomas v. Coopersmith, 663 F.App'x 120, 122 (3d Cir. 2016)
("Credibility determinations, the weighing of the evidence…are
jury functions, not those of the judge.")

    Along the same lines, Defendants rely on an inference that
if Plaintiffs became aware as early as 2010 that Defendants used
WritePad (Def. Ex. D, at 46), Plaintiffs must have known that
Defendants were using WritePad to help falsify hundreds of
treatment records.  On the contrary, this Court already
clarified in denying Defendants' Motion to Dismiss, "[t]he
service provided by [WritePad]. . .does not violate Pennsylvania
insurance fraud."  State Farm Mut. Auto. Ins. Co. v.
Stavropolskiy, No. 15-CV-5929, 2016 WL 2897427, at *2 (E.D.Pa.
May 18, 2016).  Although Plaintiffs learned in 2007 that

Defendants were using WritePad, a reasonable factfinder could find that Plaintiffs did not at that point know that Defendants were using the software to conceal a complex fraud scheme.

The second stage of Defendants' argument that Plaintiffs' statutory fraud claim is time barred focuses on a 2011 treatment record (Def. Ex. G) that alerted Plaintiffs to the "cut and paste" method for falsifying treatment records. (Def.'s Br. in Supp. of Mot. for Summ. J. at 10 – 11, Doc. No. 96-2). Defendants infer that because Mr. Holland, an attorney helping Plaintiffs investigate potentially fraudulent claims, brought the possibility of a "cut and paste" method to the attention of Mr. Costanzo, (SIU fraud investigator and Plaintiffs' corporate designee), at that point Plaintiffs indisputably knew or reasonably should have known of the alleged fraud scheme. Plaintiffs dispute this, claiming that although Mr. Costanzo "had questions regarding Defendants, he did not suspect that Defendants were engaged in fraud at that time," (Pl. Ex. G, p. 60), and that it was not until one year later, in November, 2013, that Plaintiffs "open[ed] a 'multi-claim investigation' or 'project' regarding Defendants." (Pl. Ex. I). This question will turn on whether a jury finds Plaintiffs' testimony as to when they discovered the fraud credible, and is therefore not suitable for summary judgment.

In the third stage of their statute of limitations argument, Defendants show evidence that Goldberg, Miller & Rubin (one of multiple law firms to which Plaintiffs directed claims that had been flagged as potentially fraudulent, (Def. Ex. M), submitted invoices to Plaintiffs between 2011 and 2013 as part of a RICO investigation of Defendants. (Def. Ex. J). Defendants make a leap from the existence of these invoices to the assumption that "[t]here is simply no explanation for Goldberg, Miller & Rubin including Aquatic Therapy on its RICO Investigation invoices to John Costanzo other than the fact that Goldberg, Miller & Rubin and Mr. Costanzo had already been working in concert to 'investigate' the treatment and billing being performed at both facilities." (Def.'s Br. in Supp. of Mot. for Summ. J. at 13, Doc. No. 96-2).

Furthermore, Plaintiffs dispute Defendants' suggestion that the act of referring third-party lawsuits involving potential fraud to Goldberg, Miller & Rubin proved a "shadow investigation." Plaintiffs claim they "routinely referred third-party lawsuits entirely unrelated to any 'investigation' of a medical provider involving Defendants' patients to several other law firms during this time period and afterwards." (Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot. for Summ. J. at 10, Doc. No. 100). Therefore, a reasonable factfinder could find that Plaintiffs' decision to involve the Goldberg, Miller &

Rubin law firm did not, on its own, signal they had discovered the complex fraud scheme before October, 2013. "[T]he drawing of legitimate inferences from the facts are jury functions, not those of the judge." Thomas, 663 F. App'x at 122.

In the fourth stage of their chain of inferences about when Plaintiffs discovered their injury, Defendants focus on Mr. Costanzo's 2012 review of three or four claims involving Defendants' treatment records, arguing he knew of the alleged fraud at this time. (Def.'s Br. in Supp. of Mot. for Summ. J. at 14, Doc. No. 96-2). However, Plaintiffs argue that these three or four claims "involved motor vehicle accidents and exhibited highly questionable facts that had nothing to do with Defendants' medical treatment…and thus were handled by [Plaintiff's fraud unit] for legitimate reasons which had nothing to do with Defendants." (Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot. for Summ. J. at 17, Doc. No. 100; Def. Ex. C). In the same vein, Defendants argue that Plaintiffs' "lead file" was pretext for a multi-claim investigation into Defendants' alleged fraud. (Def.'s Br. in Supp. of Mot. for Summ. J. at 18, Doc. No. 96-2). Disputing this, Plaintiffs' witness testified that the "lead file" was opened for an administrative purpose, "to have a claim number against which to pay vendors' bills" (Pl.'s Br. in Resp. to Def.'s Br. in Supp.

of Mot. for Summ. J. at 24, Doc. No. 100), and does not prove
they then knew of the fraud.

Defendants impermissibly assume that "the continued entries
[by Plaintiffs' fraud investigators] after January 2012 in the
lead file demonstrate that State Farm was actively and
continuously performing what its own lawyers were calling a RICO
investigation into Eastern Approach and Aquatic Therapy."
(Def.'s Br. in Supp. of Mot. for Summ. J. at 23, Doc. No. 96-2).
Plaintiffs, however, draw attention to Mr. Costanzo's testimony
that "neither [Plaintiff] nor [Goldberg, Miller & Rubin] was
conducting a 'RICO investigation' in 2011." (Pl.'s Br. in Resp.
to Def.'s Br. in Supp. of Mot. for Summ. J. at 17, Doc. No. 100;
Pl. Ex. G).

Disputing Defendants' inferences about when they knew of
the alleged fraud, Plaintiffs claim that they were only able to
discover the "non-credible patterns" of similar treatment after
"considering the totality of treatment records of many patients,
and then comparing them to each other in a systematic fashion"
with the help of an expert medical reviewer and legal counsel.
(Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot. for Summ. J.
at 7, 11, 15, Doc. No. 100). According to Plaintiffs, their
delay in discovering the alleged fraud was due to Defendants'
use of the WritePad software's 'randomization' feature, which
allowed Defendants to "hide that they were not legitimately

13

evaluating and treating patients' individual symptoms and needs, and to conceal the fraudulent nature of their Initial Examinations, Daily Visit Notes, re-examinations, and Discharge Summaries." (Pl. Ex. E at 2, 6).

Two additional factors, Plaintiffs argue, contribute to the genuine dispute over when Plaintiffs became aware of the alleged fraud, and why, even if they used "reasonable diligence" to discover it, it evaded them. First, the method by which Defendants submitted their claims: piecemeal ("for only a portion of the treatment dates per patient at a time" (Pl. Ex. F)), making it difficult for "patterns across multiple patients over time" to be discerned by a claim specialist who "typically lack[s] the expertise to observe complex medical patterns" (Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot. for Summ. J. at 10, Doc. No. 100). Second, Plaintiffs were required by Pennsylvania Law to issue payment within thirty days. 75 Pa. C.S.A. §1716. Id. at 9. Thus, a reasonable factfinder could determine that to comply with this law, Plaintiffs paid even those claims that were under investigation yet had not been identified as fraudulent.

We find that whether the two-year statute of limitations period for Plaintiffs' statutory insurance fraud claim should be tolled is genuinely disputed. Here, a reasonable factfinder could find that despite Plaintiffs' reasonable diligence in

14

discovering their injury, they did not discover the alleged fraud until September, 2014, after reviewing hundreds of Defendants' records with the assistance of an expert medical reviewer and counsel. "[T]he ordinary rule should apply that factual issues pertaining to the plaintiff's notice and diligence are for the jury." Wilson v. El-Daief, 964 A.2d 354, 362 (Pa. 2009), citing Fine 870 A.2d at 859. Where there are "genuine issues of material fact as to [Defendants'] statute of limitations defense," summary judgment is inappropriate. Fine 870 A.2d at 859. We find the facts are not "so clear that reasonable minds cannot differ," Schmidt v. Skolas, 770 F.3d 241, 251 (3d Cir. 2014) and therefore we deny Defendants' motion to determine the commencement of the limitations period as a matter of law.

Defendants also contend that Plaintiffs' request for damages should be barred because 95% of Plaintiffs' claimed damages were incurred from payments they made before October 30, 2013; i.e. before the two-year statute of limitations period began. (Def.'s Br. in Supp. of Mot. for Summ. J. at 37, Doc. No. 96-2 at 3). We find that a reasonable factfinder could conclude that tolling is appropriate because Plaintiffs were unable to discover the alleged fraud as a result of the scheme's complexity and Defendants' efforts to conceal it. Accordingly, summary judgment is inappropriate; the matter of the

commencement of the statute of limitations period under 18
Pa.C.S.A. §4117 et. seq. must proceed to trial.

*B. Common Law Fraud*

Justifiable reliance is an element of common law fraud
under Pennsylvania law, Santana Prods., Inc. v. Bobrick Washroom
Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005).  Thus, whether
Plaintiffs were justified in relying on Defendants'
representations is material to the outcome of Plaintiffs' common
law fraud claim.  Defendants' argue that Plaintiffs are barred
from any relief on this claim because they could not have
'justifiably relied' on Defendants records when issuing
payments.

Defendants infer that by 2011, at the disputed start of the
RICO investigation, through 2012, when Plaintiffs referred all
claims involving Defendants to its fraud investigation unit,
Plaintiffs "actually believed that every treatment record of the
Defendants was entirely false" (Def.'s Br. in Supp. of Mot. for
Summ. J. at 39), therefore Plaintiffs could not have relied on
these records.  Yet, as we reasoned when denying Defendants'
Motion to Dismiss, "[w]hether State Farm's reliance on the
submissions by the Defendants was reasonable or justified is a
question of fact; this is precisely the kind of inquiry that is
best decided by a jury…."  State Farm Mut. Auto. Ins. Co. v.
Stavropolskiy, No. 15-CV-5929, 2016 WL 2897427, at *3 (E.D. Pa.

May 18, 2016).   A reasonable factfinder could accept
Plaintiffs' testimony as credible and conclude that Plaintiffs
did not discover the alleged fraud until reviewing hundreds of
Defendants' treatment records with the help of an expert and
counsel, and that Plaintiffs therefore justifiably relied on
Defendants' representations prior to discovering the complex
fraud scheme.   We deny summary judgment and find the issue of
justifiable reliance must go to a jury.

*C. Laches*

Defendants argue that Plaintiffs' delay in bringing this
suit has prejudiced them because it has "effectively deprived
[the Defendants] of the critical factual defense" of patient
memories of treatment they received.   (Def.'s Br. in Supp. of
Mot. for Summ. J. at 40, Doc. No. 96-2).   "The party asserting
laches as a defensive bar must establish (1) an inexcusable
delay in bringing the action and (2) prejudice."   In re Mushroom
Transp. Co., Inc. 382 F.3d 325, 337 (3d Cir. 2004), e.g., United
States Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 208
(3d Cir. 1999).

Plaintiffs counter that laches is inapplicable because any
delay in bringing this suit resulted from Defendants' efforts to
conceal the fraud from discovery, and that any loss of evidence
would not prejudice Defendants.   Thus, Plaintiffs argue that
their "inability to immediately recognize the well-hidden and

complex fraud at issue in this case is not 'inexcusable.'"
(Pl.'s Br. in Resp. to Def.'s Br. in Supp. of Mot. for Summ. J.
at 31).  Second, Plaintiffs argue that any patient
recollections' that may have diminished during the time lapse
between treatment and the start of litigation is merely one
portion of relevant evidence to constitute Defendants' defense
to fraud.  The primary allegation is not that patients did not
receive treatment.  Rather, the central issue is "whether the
records Defendants' used to seek payment from [Plaintiffs] were
legitimate," and whether Defendants fraudulently concealed that
they fabricated records for the purpose of inducing payment. Id.

There is no "[p]resumption of 'inexcusable delay and
prejudice'" because whether the "statutory limitations period
that would bar legal relief has expired," is genuinely disputed.
Id. at 337, (quoting E.E.O.C. v. Great Atlantic & Pacific Tea
Co., 735 F.2d 69 (3d Cir.1984)).  "Such determinations are
typically within the jury's province unless 'the facts are so
clear that reasonable minds cannot differ.'"  Id. at 339,
(quoting Melley v. Pioneer Bank, N.A., 834 A.2d 1191, 1201 (Pa.
Super. Ct. 2003).  Where the facts are not so clear as to the
commencement of the limitations period, Defendants' affirmative
defense of laches cannot be decided at summary judgment because
both elements of the defense, "inexcusable delay" and
"prejudice," are not beyond reasonable dispute.

**Plaintiff's Motion for Partial Summary Judgment.**

**I. FACTUAL BACKGROUND**

Defendants filed a separate action in the Pennsylvania Court of Common Pleas, (Doc. No. 97-4), alleging that since 1986, Plaintiffs "crafted and honed a business strategy of attacking and undermining the credibility of doctors who treat auto accident patients," id., that years of consultation with McKinsey & Company helped Plaintiffs use their Special Investigation Unit (SIU) "to identify doctors to be targeted" as "projects," id., in order to "manufacture an excuse to deny any and all payments" and "intimidate other medical providers throughout the region into providing less care." Id. at 5. Based on these allegations, Defendants claim Plaintiffs "wantonly" violated Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.S 1701, et. seq ("MVFRL"), and "intentionally and unlawfully interfered with the economic relationship between [Defendants] and their patients" (Pl.'s Mot. Part. Summ. J. at 3, Doc. No. 97) by contacting attorneys of patients receiving treatment from Defendants (Doc. No. 97 at 9). This action was consolidated with Plaintiffs' case alleging Defendants' fraud.

    **II. LEGAL STANDARD**

"In a bad faith case, summary judgment [in favor of the insurer] is appropriate when there is no clear and convincing evidence that [its] conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 523 (3d Cir. 2012) (quoting Bostick v. ITT Hartford Grp., 56 F.Supp 2d 580, 587 (E.D. Pa. 1999). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a party's motion for summary judgment, must construe "all evidence. . . .in the light most favorable to the party opposing summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986) and "draw all reasonable inferences in that party's favor." Burton v. Teleflex, Inc. 707 F.3d 417, 425 (3d Cir. 2013). "[T]he moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" Moody v. Atlantic City Board of Education, 870 F.3d 206, 213 (3d Cir. 2017)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). The non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik

v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). E.g.,

Larkin v. Methacton Sch. Dist., 773 F.Supp. 2d 508, 21 (E.D. Pa.

2011) (quoting Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969

(3d Cir. 1982) (explaining that nonmoving party, although

afforded "justifiable inferences," may not avoid summary

judgment and have his case proceed to the jury "merely upon bare

assertions, conclusory allegations or suspicions").

## III. DISCUSSION

Pennsylvania's Motor Vehicle Responsibility Law (MVFRL)

requires "automobile insurers to provide medical benefit

coverage 'for reasonable and necessary medical treatment and

rehabilitative services' after a motor vehicle accident." Odgers

v. Progressive Northern Ins. Co., 112 F.Supp. 3d 286, 289 (M.D.

Pa. June 23, 2015).  Under the MVFRL, medical providers are able

to recover "in the event an insurer is found to have acted with

no reasonable foundation in refusing" payment, and treble

damages are available "if a court finds the insurer's conduct

wanton." Id.  Defendants argue that Plaintiffs violated the

MVFRL by unreasonably and in bad faith denying all Defendants'

treatment claims submitted after the start of Plaintiffs' 2015

fraud action, without "any consideration of the actual treatment

provided or injuries suffered by the patients."  (Def.'s Resp.

to Pl.'s Mot. for Part. Summ. J. at 6, Doc. No. 98).  Under

§1797 of the MVFRL, treble damages are available if the claiming

party can prove "1) they submitted bills for reasonable and necessary treatment, 2) Plaintiffs did not challenge the bills before a Peer Review Organization ("PRO"), and 3) Plaintiffs' conduct was 'wanton'." §1797(b)(4). "Wanton and bad faith may be equated, because intentionally doing an unreasonable act (acting wantonly) is the equivalent of knowingly ignoring a lack of a reasonable belief for a denial (acting in bad faith)." Rudisill v. Cont'l Ins. Co., 2001 WL 1167498, at *2 (E.D. Pa. Sept. 13, 2001) (quoting Morrison v. Mountain Laurel Assurance Co., 748 A.2d 689, 691-92 (Pa. Super. Ct. 2000).

In moving for partial summary judgment, Plaintiffs argue that their "conduct in denying bills for the same services by the same providers for which [State Farm] has alleged a widespread medical fraud, pending resolution of this case, cannot be 'wanton' conduct. . . .under the MVFRL." (Pl.'s R. to Def.'s Resp. to Pl.'s Mot. for Part. Summ. J. at 5, Doc. No. 105). Defendants are unable to show 'clear and convincing evidence' of Plaintiffs' bad faith; they have shown no evidence that the insurer, "(1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis for denying the claim." Post, 691 F.3d at 522 (3d Cir. 2012) (quoting Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006)).

Defendants rely on evidence that Mr. Costanzo testified that after filing this litigation, Plaintiffs used a TIN (Tax Identification Number) Diversion to direct Defendants' bills to a designated adjuster and then deny payment. Even construing this evidence in the light most favorable to Defendants, evidence of diversion to an adjuster, absent any other evidence to support a claim of Plaintiffs' bad faith, does not establish a genuine dispute whether Plaintiffs denied payment "wantonly" or "in bad faith" under MVFRL §1797(b)(4). Mr. Costanzo in fact testified that "[a]t the time the TIN block was issued, State Farm made a decision to not pay those claims until they were reviewed and then once they're reviewed, if they're consistent with the [fraud action] allegations, then they would be denied." (Def.'s Ex. D. at 182). We find it beyond general dispute that Plaintiffs did not act in bad faith and did not lack a reasonable basis in denying Defendants claims that were received after the start of Plaintiffs' fraud litigation. Without "clear and convincing evidence that [an insurer's] conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim," Post, 691 F.3d at 523 (quoting Bostick v. ITT Harford Grp., 56 F.Supp. 2d 580, 587 (E.D. Pa. 1999), summary judgment is appropriate.

Defendants show no evidence in support of their assertion that Plaintiffs used "mere accusations of fraud to drive down

claim payments." (Def.'s Resp. Pl.'s Mot. Part. Summ. J. at 7,
Doc. No. 98). On the contrary, Defendants used the attorney-
client privilege to avoid testifying to "facts which allegedly
support their State Court Action claim." Id. at 15. See Larkin
v. Methacton Sch. Dist. 773 F.Supp. 2d 508, 521 (E.D. Pa.
2011)("Bare assertions, conclusory allegations or suspicions"
will not defeat summary judgment). See Robertson v. Allied
Signal, Inc. 914 F.2d 360, 382 (3d Cir. 1990) ("[A]n inference
based upon a speculation or conjecture does not create a
material factual dispute sufficient to defeat entry of summary
judgment").

We find Plaintiffs have met their burden in showing there
is no genuine dispute that they stopped payment to Defendants
for post-litigation bills out of a "bona fide belief that
Defendants' bills were fraudulent," after "observing non-
credible patterns in Defendants' records" indicating to
Plaintiffs that the records had been falsified in order to
induce payment. (Pl.'s Mot. Part. Summ. J. at 14, Doc. No. 97).
Since Defendants offer no competing evidence of Plaintiffs'
alleged bad faith in denying their claims, no reasonable jury
would be able to find that Plaintiffs' "wantonly" violated
Pennsylvania's Motor Vehicle Financial Responsibility Law. The
record establishes beyond genuine dispute that Plaintiffs had a
basis for denying Defendants' claims submitted after the

24

commencement of this litigation, when Plaintiffs were on alert that Defendants' claims could be fraudulent. We therefore grant Plaintiffs' motion for partial summary judgment and Defendants are precluded from seeking treble damages under §1797 of the Motor Vehicle Financial Responsibility Law ("MVFRL").

## IV. CONCLUSION

For the reasons stated in the preceding Memorandum Opinion, Defendants' Motion for Summary Judgment is denied and Plaintiffs' Motion for Partial Summary Judgment is granted. An appropriate Order will follow.